## Higgins Lumber Company v. Cunningham, et al.

(Decided March 23, 1926.)
(Modified December 3, 1926.)
Appeal from Jefferson Circuit Court
(Chancery Branch, First Division).

1. Mechanics' Liens—Materialman Held Entitled with Other Lienors to Only His Pro Rata Part of Contract Price of Improvement Paid Into Court, and which was but 82 Per Cent. of Actual Cost (Ky. Stats., Section 2463).—Where contract price of improvement was but 82 per cent. of actual cost, held materialman who filed notice of intent to claim lien under Ky. Stats., section 2463, before owner gave mortgage on premises, and later filed claim, in suit to enforce lien, wherein owner paid into court difference between amounts already received by lienors, except mortgagee, and contract price, was not entitled to more than 82 per cent. of his claim, his pro rata part of contract price.

2. Mortgages—Materialman, Having Filed Notice of Intent to Claim Lien Before Mortgage of Premises, Held Entitled to Priority Over Mortgage, and, Mortgage in Turn Entitled to Priority Over Lien Claimants, Who Filed no Notice (Ky. Stats., Section 2463).—Under Ky. Stats., section 2463, where materialman filed notice of intent to claim lien before owner gave mortgage on premises, and latter filed claim, held, in suit to enforce lien, he was entitled to priority over mortgage, and mortgage in turn entitled to priority over other lien claimants, who filed no notice of intent to claim lien before giving of mortgage.

BEN F. GARDNER for appellant.

A. M. MARRET, WALLACE McKAY, ROWAN HARDIN, ED G. HILL, D. MOXLEY, A. E. WALSH and H. F. CROUCH for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

Appellant, Higgins Lumber Company, dealers in lumber and building materials, in Louisville, sold and delivered materials to one Buckhart, a contractor, to be used in the erection of the residence of H. W. Rabenecker, to the amount of $1,549.56, between April 15th and July 15th, 1924. About the time appellant began to furnish material it filed notice in the office of the clerk of the Jefferson county court, pursuant to section 2463, Kentucky Statutes, of its intention and expectation to furnish such material, and later within the time prescribed by statute, filed a notice in the same office, in compliance with the same section of the statutes, showing the materials and value thereof it had furnished to be used in the construction of the Rabenecker residence. After the filing of its notice of intention to supply such materials as aforesaid, the owner, Rabenecker, obtained a loan of $5,500.00 from a trust company, mortgaging the property thus being improved as security, and this mortgage was duly placed to record in the proper office. Later other materialmen, including some of the appellees, furnished material to be used in the building and filed the notice of lien provided for in section 2463, *supra*. In the meantime the owner, Rabenecker, paid to the contractor and the contractor to the materialmen something more than $2,800.00, a part of the loan of $5,500.00, of which amount $400.00 was received on account by appellant. The building cost $7,067.65, but the contract price was only $5,800.00, eighty-two per cent of the actual cost.

Appellant company instituted this action for the enforcement of its materialmen's lien, making the owner, Rabenecker, and wife, parties along with the Lincoln Bank & Trust Company, the mortgagee, and appellee, Cunningham, and other materialmen who furnished lumber, etc., for use in the Rabenecker building. Each claimant answered and asserted his lien. A stipulation of fact signed by the parties was made a part of the record and when the cause was submitted the chancellor held that the plaintiff, now appellant, Higgins Lumber Company, "has a lien on the money in court ($2,936.26) for

the *pro rata* of its claim in the proportion that the total mechanics' lien claims bear to the total contract price, to-wit, 82%, whereas the plaintiff's total claim was $1,534.71, it as adjudged has a lien on the funds in court for 82% thereof, less the amount of $400.00 heretofore paid to plaintiff before filing this action, to-wit, $852.45. It is further considered and adjudged that the defendants (appellees), having filed their statements after the mortgage, the balance of said funds in court, to-wit, $2,077.80, be prorated equally among the defendants (appellees) at the rate of 67-69/100%, and that the defendants have liens on the funds in court for the following amounts,'' (setting out the amounts).

The stipulation of the parties, reads:

"The plaintiff, Higgins Lumber Company, on June 19th, 1924, filed a statement in the Jefferson county clerk's office of its intention to assert a lien against the property described in the petition for the sum of $1,134.71; that thereafter on July 18th, 1924, the plaintiff filed a materialman's statement in which it asserted a lien on the property described in the petition for the sum of $1,149.56, and said plaintiff now thereby has a lien on the funds in court for the sum of $1,149.56; that the defendant, Lincoln Bank & Trust Company, has recorded a mortgage lien on the property described in the petition for the sum of $5,500.00 and 6% per annum interest thereon from July —, 1924; that said mortgage lien was recorded on the 12th day of July, 1924; that the defendant, J. P. Cunningham on July 30th, 1924, filed a mechanic's lien statement in the Jefferson county clerk's office and he thereby now has a lien on the funds in court in the amount of $594.00; that the defendant, Harry Formhals on August 14, 1924, filed a mechanic's lien statement in the Jefferson county clerk's office and he thereby now has a lien on the funds in court in the sum of $97.20; that the defendant, A. B. Madlon, on August 20th, 1924, filed a mechanic's lien statement in the Jefferson county clerk's office, and he thereby now has a lien on the funds in court in the sum of $50.58; that the defendant, L. G. Staehle, on August 29th, 1924, filed a mechanic's lien in the Jefferson county clerk's office, and he thereby has a lien on the funds in court in the sum of $249.86; that the defendant,

George C. Bickel, on September 2nd, 1924, filed a mechanic's lien statement in the Jefferson county clerk's office and he thereby now has a lien on the funds in court in the sum of $280.00; that the defendant, Otto Rouch, filed a mechanic's lien statement in the Jefferson county clerk's office and he thereby now has a lien on the funds in court in the sum of $531.90; that the defendant, L. J. Bolster Co., on September 25th, 1924, filed a mechanic's lien statement in the Jefferson county clerk's office and it now thereby has a lien on the funds in court in the sum of $390.41; that the defendant, J. F. Walker, on October 11th, 1924, filed a mechanic's lien statement in the Jefferson county clerk's office and he thereby now has a lien on the funds in court in the sum of $864.00; that the original contract price for the erection of said improvements amounted to the sum of $5,800.00, of which $2,863.75 was paid by the owner of said property to the contractor, who, before the execution of this action, paid said $2,863.75 to persons who furnished material and performed labor under said contract for the erection of the improvements on said property; that said $2,863.75 was paid to persons who furnished materials and performed labor on said property, other than the persons asserting mechanic's lien claims herein, except the planitiff, Higgins Lumber Company, which received $400.00 of said $2,863.75 on the 6th day of May, 1924, and which were sold and delivered materials between April 5th, 1924, and July 15th, 1924. Also stipulated that the plaintiff furnished and delivered lumber and material in value not less than $400.00 prior to June 19, 1924. It is further stipulated that the property against which said liens are asserted, would, if sold by the court in this action, net for distribution among all of the lien holders, including the Lincoln Bank & Trust Co., no more than the amount of said mortgage, including interest, plus the amount paid into court by the defendant, Rabenecker, as shown by order of this date.''

Thus we see that by this stipulation it is agreed that had the property been sold in this proceeding it would have netted for distribution among all the lienholders, including the mortgagee, no more than the amount of the mortgage, including interest, and the sum of $2,863.75,

being the amount paid into court by Rabenecker, for which reason it was agreed that the property need not actually be sold, but should, for the purpose of this suit, be treated as sold and as bringing the net amount above stated. On this assumption the question is whether or not the trial court correctly adjudged the priority of the liens asserted by the various lienholders herein.

Preliminary to the question of priorities is that of the extent of the liens of the various claimants herein. Section 2463 of the statutes, under which these mechanics' liens were asserted herein, gives to persons who perform labor or furnish materials "in the erection, altering or repairing of houses, buildings or other structures . . . or for the improvement in any manner of real estate by contract, with or by the written consent of the owner, contractor, subcontractor, architect, or authorized agent, a lien thereon and upon the land upon which the improvements shall have been made, or on any interest the owner has in the same" to secure the amount thereof with costs. This same section towards its close reads:

"The liens provided for herein shall in no case be for a greater amount in the aggregate than the contract price of the original contractor, and should the aggregate amount of the liens exceed the price agreed upon between the original contractor and the owner, then there shall be a *pro rata* distribution of the original contract price among said lienholders."

This section clearly provides that the extent of mechanics' liens authorized by it shall in no event exceed the contract price of the property, and that should the amounts for which liens are asserted exceed that contract price, then the liens shall not be for a greater per cent of the amounts for which they are asserted than the contract price bears to such total amounts. In other words, in case the asserted liens exceed in amount the contract price, the statute does not give the lien claimants a lien to the full amount of their claim, but only to the extent of the percentage the contract price bears to the total amount of liens asserted, and this is true independent of the question of priorities.

In the case before us the percentage of the contract price to the liens asserted was 82 per cent. Therefore, the extent of the appellant's lien did not go to the full

contract price of the materials he furnished, but only to 82 per cent thereof.

The next question is as to priority of the liens herein set up. A reading of our mechanic's lien law clearly convinces one that each lien claimant is required to perfect his own lien. To obtain priority over a mortgage or other contract lien or *bona fide* conveyance for value without notice duly recorded or lodged for record according to law, one asserting a mechanic's lien must, before the recording of such mortgage or other contract lien or conveyance, file in the county clerk's office notice that one has performed or furnished or expects to perform or furnish labor or material and the amount for which one will claim a mechanic's lien. This notice protects against the subsequent mortgagee or grantee only those who give such notice, and it protects them to the full extent of their liens, as that is determined by the statutes as we have seen. Those who fail to give such notice are postponed until those who do give the notice are satisfied to the extent of their liens and the prior mortgagees are discharged.

Applying the principles to the case before us, the appellant was entitled to have his lien discharged to its full extent, which, as stated, was 82 per cent. The mortgage coming next, it should have been paid in full. There still being a balance, it should have been distributed *pro rata* among those who assert mechanics' liens but failed to give the notice entitling them to priority over the mortgage. This *pro rata* distribution amounted to 67 per cent of their claims. As the chancellor's judgment is in accord with these views, it is affirmed.